All right, the next case before the court, case number 141422, Endo Pharmaceuticals Inc. v. Mylan Pharmaceuticals Inc. Mr. Lewis, is it my understanding you want to reserve four minutes for rebuttal? Yes, Your Honor. Okay. All right, you may begin. Thank you, ma'am. Please, the court, I represent Plaintiff Appellant Endo. My name is Jeffrey Lewis. The district court found that there was a settlement between the parties, and it found that not based upon any writing, because no writings had actually been agreed upon. It did it based upon a phone conversation that was 90 seconds long. It did it based upon a phone conversation that was done in abbreviated fashion while traveling. It did it based upon a phone conversation where the parties had had incremental discussions about terms. At that phone call, three of the four terms were set in concept. No one said those were the only terms. The fourth term was yet to be agreed upon. And importantly, Endo's counsel ended the call by saying there are, quote, significant issues to be resolved before any settlement can be completed. Okay, now, with respect to the, you know, if we could take all those in pieces and parts, but with respect to the fact that it was a 90-second phone call, given the fact that it comes at the end of long discussions, isn't it possible that you could have a 30-second phone call if there was, say, one critical term left and the last thing says, we're a go, we got it? Does the time of that phone call really make a difference in context? The time of the phone call makes a great deal of difference in context, but I accept Your Honor's hypothetical that if the conversation were, okay, we've got one term left, here's where we are on the one term, and the answer on the other side was, great, we have a deal, let's write it up. Had that been the phone call, then yes, Judge O'Malley, it doesn't matter how long that phone call was. Okay, so if it was only three points that were in play, you've just said there's a contract, right? Well, I haven't, Your Honor, because the answer on that phone call that we're discussing was there are significant issues still to be resolved. I understand, but all that is well-briefed and well-argued and well-dealt with in the opinion below, all much facts found against you. So you've got a big hill to climb in terms of finding clear error in the way in which the district court responded to the argument you just made. Well, Judge Clevenger, I'd split that. I will respectfully disagree on two grounds, one of which is it's not entirely clear error. The case law makes pretty clear, makes very clear, that the existence and legal consequences, that's a plenary review issue. The underlying factual findings is clear error. Now, there is no dispute as to what was said on this phone call. The facts are agreed upon in terms of the words used in the call, with the small exception of the discussion of a subsequent letter to be sent to the district court. Let me ask about the case law. There was some debate below whether we were supposed to be applying Pennsylvania law or Delaware law. The court ultimately concluded that there was no real difference, so it applied Delaware law. You're not disputing that conclusion, right? We're operating under Delaware law? Correct, Your Honor. Okay. Then with respect to Delaware law, the Delaware law does not require a writing, does it? It does not require a writing so long as there is under the Delaware case law an objective manifestation of... Unless there is an explicit requirement for writing. Unless there's an explicit requirement for writing. Which there's not in this case. Well, we believe that there was a requirement for writing, Your Honor, and that's one of the points... Explicit requirement? We believe it was the understanding of the parties, and certainly the only thing that's pointable, because this is one of these very weird cases, there is no writing that anyone can point to. There was not an exchange of email. There was not a term sheet. What we can point to is the January 24th draft that Mylan sent over, with all sorts of caveats saying my boss hasn't read it and we may do further revisions, but if you look in that January 24th draft, which is the only writing, it includes anything not in writing doesn't count provision. One of the things that, well, maybe we can talk about... We're dancing around the name of the provision, which I don't know if that... Judge Breyer, we've conferred beforehand and agreed... We can talk about the name? We can name it. All right. Okay.  And, you know, there is an immense chilling effect from the district court's decision on the ability to have these sorts of conversations and the ability to settle cases. Either that or there is a heightened sense of the need to be careful in what you say. I saw your argument about the chilling effect, but, I mean, when the rule is down, you know how to behave. Well, Judge Clevenger, if the comment is that's great on these three terms, there are significant issues still to be discussed, it's really tough to be more particular in your comments than that. Sure. This is not a contract. This is not an agreement. I don't agree. Well, but they were agreed on those three terms. No, but my point is if... Your point is that if we were to affirm what would happen here, there is a parade of horribles in the marketplace about folks who will be afraid to enter into discussions leading possibly to settlement, which is always in the public interest. And for that reason, a policy reason, we should tilt your way on the fact findings. All I'm questioning is whether or not that's really true. But it is true, Your Honor, that that is what was said. Before any settlement can be reached, there are significant issues to be discussed. Isn't that... I'm simply talking about your chilling effect, your policy argument on chilling effect. I mean, that's kind of like a First Amendment type argument. You're saying that, gee whiz, if we're going to affirm that this is a contract here, folks won't want to come to the negotiating table anymore to talk about a settlement in cases like this. If we are going to have a decision that says, saying, that's great, and adding, but there are significant issues to be discussed before a settlement can be completed, if that's not the same as your hypothetical of saying, well, we haven't reached an agreement yet, then quite frankly, Your Honor, I do think you have a huge chilling effect on conversations. I think settlement, which is to be encouraged, and there's a public policy of settlement, you've destroyed that opportunity. What about the understanding that it would inform the judge that an agreement in principle had been reached? It seems to me to cut the other way, and the judge found so. There are a couple of answers to that, Your Honor. We start with the simple statement that an agreement in principle is not enough to enforce a settlement agreement under Nelson. But in addition, that is a disputed fact as to what was said on that conversation. But you found that it was said. Well, there was certainly discussion of sending a letter, and the judge said the letter would have said settlement in principle. The parties agreed that there was a discussion of sending a letter. The parties agreed it would be sent in draft for review by Endo's counsel. We're aiming at a target that is really a double if not triple hypothetical. What would the letter have said, how would it have said it, and would it have been agreed to? We never got to that point. And I understand that Judge Bumbelow made certain findings on what the letter would have said based upon the conversation. Although that's really the only thing in that phone call that's disputed is what would the letter have said. But the finding that the letter would have said an agreement in principle is reached is directly contradictory to the agreement of both parties that Mr. Donatello said there are significant issues to be resolved before any settlement could be completed. The language that's not in dispute clearly is at odds with saying we have a complete agreement in principle. Well, and Judge Bum could have found, I suppose, on this record that the no agreement was reached as to the need to inform the judge that an agreement in principle had been reached and that there was no agreement in principle. But she found the contrary. She found that piece of evidence to be more compelling than the piece of evidence that talked about the significant issues. I mean, there surely are. There are many contracts, as you know, in which there are issues that are not resolved between the parties that were contemplated initially to be within the reach of what would be the ultimate resolution the parties hoped. They don't get resolved. Nonetheless, the parties have an agreement on those matters as to which they reach agreement. Why isn't that this case? It isn't this case. Virtually every collective bargaining agreement out there has agreements on a number of issues and other issues get left unresolved. It's quite common. There are certainly settlement agreements that are reached where some of the details and some of the non-material terms are still open. And that's the question in this case. Was it a material term or a non-material term? And we had in this case, Your Honor, a number of material terms that were not resolved. Well, who decides if they're material? Well, the easiest case is to go to what the parties actually said as agreed upon, of course. But is it a fact-finding or is that a legal conclusion? As the Quandary case says, Your Honor, it becomes muddy when you're dealing with just oral conversations and there's no paper trail because it is a legal conclusion. It is for this court to decide as a matter of law whether there was an existence and the legal consequences of any agreement. There are underlying factually legal consequences. Is there a contract? Yes or no? That is a question of law. That's sort of like obviousness. Is it obvious? Yes or no? Guess what? You have to make all these factual findings. And there was a factual finding made here, as I understood it, that the other issues were non-material to the contract. So if the judge is correct about that, then your extra issues argument goes down the drain. But the judge, Your Honor – I don't see how you can morph the, are these extra issues material or non-material, morph it out of a factual determination into a legal determination. It drives a piece of the legal interpretation. It doesn't lose its character as fact, I would think. But Judge Bum, with all due respect to Judge Bum, her analysis of starting with the January 10th call is factually incorrect, and we know that. Judge Bum says that on the January 10th call there was discussion of the three terms out of the four. We know that that's not true because we know that both sides testified. What happened was – How does that have to do with whether or not these additional factors in January 23rd are or are not material? That's what you and I are talking about. Well, because, for instance, Judge Bum found that the trigger, the sales trigger that Judge Bryson brought up, was not a material term. And it was a material term. We know that it was something that Mylan proposed early on in the case. We know that it was Mylan that insisted it be – Something that was then dropped, loses its materiality. But it wasn't dropped. With all due respect to Judge Clevenger, the conversation was it was agreed to in principle, and we'll come back to it. Judge Bum agrees with that. Judge Bum says it was never come back to, but Judge Bum also admits, or recognizes, that it was in the January 24th draft. It was in the January 24th draft. It certainly wasn't dropped. It was the fourth term that was reserved for later conversation. We know it was reserved for later conversation because Mr. Donatello brought it up on that phone call. Well, besides that, the declining sales trigger, what other terms – you said there were a number of terms that were still in dispute, significant terms. What would you say are other terms besides the declining sales trigger to qualify? Well, there was a real dispute between the parties as to when the cash payment would be made. Oh. What is the – when the cash payment? What was the – that's not the two-day disparity, right? That is not the two-day disparity. Okay, all right. All right, the cash – when the cash payment would be made. When the cash payment would be made. What else? Of course, the two-day disparity. Let's set the two-day disparity aside. All right, what else? The – if I want to identify it in terms of the January 24th draft, it also had a significant amount of pre-marketing that they could come on the market and start announcing and commit infringing Act 60 days before the launch date that had been discussed, the four weeks, setting aside the two days. We'll just call it the four weeks. And you think those are essential terms? To infringe six months – 60 days earlier? Yeah, that's an essential term, Your Honor. That is a material entry into the marketplace. Limitations on whether ENDO could make any changes to its label, that it couldn't make any changes without pre-approval by Mylan. Well, all of those terms were – fell within, as I understand the record, the statement by Dr. Triglio, is that – Tiglio, I think it's pronounced, Your Honor. Tiglio, T-L-I-O, T-L-I-O, that mark it up, which suggests, and I think Judge Baum reached the same conclusion, that that was her way of saying you make whatever changes in the January 24th draft that are suitable to you and that's fine. But Dr. – She was concerned with the three principal elements that she had agreed to and that she reiterated during that conversation, if I understand the record. And the record does say that she reiterated during that conversation that Mr. Donatello said perhaps she had. He couldn't be precise on that, but she may have. But the fact of the matter is that what was not said on that phone call, when Mr. Donatello said, but what about the significant issue of the declining sales trigger, Dr. Triglio's response was not, oh, you know what, that's not – we had said it was a threshold term, but that's now a detail or that's now something that we can talk about, or anything that was diminutive. Because Judge Baum gave a huge credit to what was in the subjective minds of Mylan. And the case law, as we set out, is very clear that the subjective mindset of Mylan doesn't matter. And to look at it in the reverse, to consider the hypothetical in the other direction, suppose the merits decision had come in in Mylan's favor. Suppose Judge Baum had ruled the patent was invalid. Would Mylan have launched its product or would Mylan have said we have an agreement that we won't launch until October, wherever the four weeks falls out? Mylan would have said, oh, no, there's no settlement. Endo said there were significant issues. And you would be arguing that there was? Yeah, I'd be arguing the opposite. No, actually, I think we would have taken the position of it took too long. Yeah. All right. You're past your rebuttal time. We'll restore your four minutes of rebuttal. We'll add four minutes to the opposing counsel's time. Good morning. May it please the Court. My name is Michael Sommer. I represent Mylan in this matter. The record below is clear. It demonstrates the district court committed no error. It applied the law correctly. Its factual findings were amply supported by the evidence. And its credibility determination should not be disturbed. If it's true that these other terms were not essential terms of the contract, then why was the declining sales trigger included in the draft of January 24th? Yes, Your Honor. So I think the best way to answer that is it was discussed early on. The Court correctly found that it basically dropped off the radar screen. Both sides agree, Your Honor, that the draft was not a counteroffer. Both sides agree there was a settlement offer that contained three and only three terms, and the settlement offer that was accepted contained three and only three terms. It did not include the sales trigger. Is the district court's determination that it was non-essential correct? It has to be, and here's why. What's the definition of a non-essential term? One that neither party is prepared to dig their heels in and care about. The hearing record below demonstrated that's exactly how both sides felt about the declining sales trigger. Milan's testimony was, yeah, it would be nice if we had it. Endo's testimony was, yeah, we'd probably give it to them. So you're viewing the January 24th letter as a wish list, on which you were not going to throw yourself on your sword, but it'd be grand if they'd agree to it all. Certainly. Is that your position? Certainly. It was to keep the ball rolling, as Dr. Tillio testified, to get something out there. If there were any of these non-essential terms that could be agreed to, terrific, and as Your Honor already noted, mark it up, certainly denoted that none of these were essential and none of these were a deal breaker. And, of course, the record… Mark it up can be read in two ways. Mark it up, we're happy with whatever you do, or mark it up and we'll look at it. Of course, and that's why we have a district court judge evaluating the record through making credibility determinations of the witnesses. And what's most significant here, Your Honors, is that the record of what was agreed to cannot be clear. There was a settlement offer made on January 10th. Mr. Lewis, counsel below, represented to the district judge that it was a settlement offer, final or close to final settlement offer made to Milan. Mr. Donatello at the hearing confirmed it was the final settlement offer at page A2761 of the record. Question, can we agree, sir, that on January 10th, Endo had made its final settlement offer to Milan? Would you agree with that characterization? Answer, yes, that's right. And then that settlement offer had three terms. And there was no dispute what the terms were. It had three terms and only three terms. None of these other so-called disputed issues were out there. It had three terms. And that settlement offer stayed open until January 28th at 2761. Question, to Mr. Donatello, this is Endo's witness. Would you also agree that as of January 28th, Endo had not withdrawn the settlement offer it had communicated to Milan? Would you agree with that? Answer, yes, I would agree with that. And then what happened on January 28th? Just one more question and answer. Question, let me ask you this, sir. This is, again, Endo's own witness. Let me ask you this, sir. On the morning of January 28th, when you woke up and got ready to go to work, there was an outstanding settlement offer from Endo to Milan. Correct. Answer, that's right. Question, and later that morning Andrea Tillio called you and told you she accepted, on behalf of Milan, that offer. Correct. Answer, that's correct. What about the timing of the payment? The timing of the payment? Yeah, the payment of the attorney's fee. So you all said in the draft that you wanted it five days. The way this agreement sits, they could wait ten years to pay you, right? Wouldn't that be material as to when the payment would be made? I submit no, Your Honor. I think the amount is what's material. I think the exact payment date is ministerial, and it's got to be a reasonable date. And I agree with Your Honor. There's not an agreement on the date of payment. I agree with that. I can't argue otherwise. But that's a ministerial task. What day are you paying us? I don't think you could wait ten years. I don't think that's reasonable. But there was an agreement on the date, and that was one of the elements. But a court can't imply terms in a contract. You have a contract or you don't, right? Well, the term was an amount. The amount was agreed to. And I can't argue with Your Honor that there was a date there. There was not a specific date. But I think as any term, it's a reasonable interpretation of what the agreement was. Is there a meeting of the minds of the parties? There's going to be a payment. I don't think it would be reasonable to say, oh, that's going out ten years. I don't think that would be reasonable. So I think for that to defeat an agreement of the parties where a phone call, and I do dispute this timing on the 90 seconds is significant. I mean, this is the end of a long dialogue. And the phone call is, we accept your offer. We accept. And the answer is, that's great. But it doesn't end there. There's a recital of the three material terms, exactly what they are. Dr. Tillio testified to that. There was no contrary testimony about that. So that's laid right out there. And then we get to this issue they're trying to make before this court of that there were significant issues. First of all, the only place the word significant appears is in the declaration that Guy Donatello wrote immediately in advance of the hearing. At the hearing itself, Dr. Tillio testified, and her testimony was credited by the district court, that Guy Donatello said that there were issues on the draft, not on the agreement they had reached on three terms. Didn't Donatello use the word significant when he testified? I believe his testimony, my recollection, Your Honor, is he said issues, that there were issues. And Dr. Tillio said there were issues relating to the settlement agreement. But maybe the word significant, I'm overplaying the word significant. The point is, Dr. Tillio testified that it related only to the settlement draft. She gave her response to mark it up. And the district court credited that testimony, found Guy Donatello's testimony questionable, and concluded that that only had to do with the settlement offer. And what's most significant then is what happens after that. There's an agreement to send a letter to the judge. Dr. Tillio testifies that Mr. Donatello dictates the term of the letter, saying let the judge know we've agreed on all material terms. Material terms, that's what she testified to. Mr. Donatello doesn't remember what happened in the conversation. So, you know, why is that conversation even happening? Why are they even talking about letting the judge know that there's an agreement on all material terms? That brings me to a point. The policy argument that your friend on the other side is making, it's not really frivolous. I mean, I was actually kind of shocked when I saw this, because having been on the district bench for 16 years, I can tell you that in Ohio this would not be an enforceable settlement. That in Ohio, oral settlements of a lawsuit are not enforceable unless the court is informed and the court is informed of the key terms. And there's a reason for that, I guess, under Ohio law, is because they don't want to have he says, she says, and back and forth and fights over whether or not there was a settlement. And so you either have one in writing or you inform the court. So it seems a little odd that this would constitute a settlement. Well, you know what's really odd here is the unique timing of what happened. And that's why I don't think there's a potential chilling effect, because what happened here was unique. There was an agreement by the parties that they had a settlement. They agreed to let the district judge know. And before that letter could get submitted, literally 20 minutes later, the district judge releases its merits decision. And what's very noteworthy is when Milan representatives call back ENDO and say, look, we just want to make sure you're standing by your agreement. The answer is not, oh, no, there are these significant issues. That's not the answer they get at all. The answer they get at all is it's not in writing. That's at page 2774. Question. This is Milan representatives. This is Mr. Donatella. They stated the parties had agreed to a settlement and the settlement was enforceable. Answer. That was their contention. Yes. Question. What did you say? Answer. I said the agreement's not in writing. So it's not, oh, there are these significant issues. It's that it's not in writing. So I'm not, I submit that you should not be worried about a chilling effect or some policy angle here because the facts of this matter are very, very unique where this merits decision comes down literally almost passing in, you know, in space as this letter is going to be prepared and submitted to the district court. But at the end of the day, you have an agreement, an undisputed record where there were three terms to a settlement offer. Three terms. No dispute what they are and an acceptance of that offer. And on that record, particularly in light of the credibility determinations, the district court under the law of Delaware was well within its right to find that oral settlement agreement enforceable. Let me just quickly check my notes. Where do we draw the line between what's a fact finding and what's a legal conclusion? Well, I think the district court did it properly. I think where there are disputed issues of fact, the district court should conduct a hearing. And then from that hearing record, resolve those disputed issues of fact and apply them against the body of law that controls. So here there actually were very, very few disputed issues of fact. And in addition, there were very, if any, few disputes about what the law was. Both sides agreed that the law provides that if the essential and material terms are agreed to, an oral contract can be enforced. Both sides agreed to that. Both sides went forward with a hearing where any factual disputes could be resolved. Both sides agreed to that. The district judge performed its function properly. It made credibility determinations where necessary and then applied that factual record that she found against the body of law that the parties agreed was the controlling law. The only disputed issue on law below was whether it was a clear and convincing standard or whether it was a preponderant standard. We argued it was preponderance. Endo argued it was clear and convincing. The district court found it was preponderance but also found that even if she applied the clear and convincing standard, we would have satisfied our burden. So I think we're right on the burden, but it ended up not being an issue. So Judge O'Malley, that's how I would answer your question. It's really not different. I don't think you need to draw a line. It's not different than any other hearing a district judge, and that you did for many, many years, has to determine disputed issues of fact and then apply it against the gloss of the law that controls the circumstances before the court. That's what the district judges do all the time. And here this was only unique in that that merits decision came out in that short time frame. Nothing else was unique about this. There's no chilling effect. There's no policy consideration. One brief word. Judge, I'm not sure you're right about the fact that this is a one-off case that would never happen again because it's unique. Oftentimes, even at this court, from time to time, we've leaned over and said, shouldn't this case be settling? And the parties scurry off to settle in a hurry before a decision comes down. You're right, Judge. I guess. I'm not saying it could never happen again. I'm saying this was a somewhat unique fact pattern where I submit that, you know, had the merits decision not come out, I never would have had the occasion to meet the three of you because the settlement would have gone forward. They agreed. The only thing that changed here was they got a decision they liked and they wanted to renege. And they took advantage of the fact that we didn't yet have a writing. That's what they said. It's not in writing. Not a disagreement that we had an agreement orally, just that it wasn't in writing. And under the law, I don't think they get that mulligan. They don't get the do-over and they don't get to renege. Thank you very much. Okay. I said I would restore your full four minutes, and we did even though your friend on the other side didn't use all of his time. No, I will try not to use all four, but I'm afraid I can't promise that because there's a couple of record citations I'd like to call to the Court's attention. And one was the question, Your Honor, was whether or not Mr. Donatello had used the word significant and whether Ms. Tiglio had agreed that the word was significant. And I would refer the Court to the record at 82676 towards the bottom question. Did Mr. Donatello tell you there were significant issues to be resolved before a settlement could be completed? Answer, he said that, but not in respect to that freight. He said it when I asked him if he had reviewed the draft settlement agreement, and then it continues on. So Dr. Tiglio certainly agreed in the record. The word significant does not only appear in the declaration. It's part of the record the trial court established. But what I really want to address are two other points, one of which is Mylan makes much of the description of a final settlement that the phone call on the 10th, and let's just review what happened on the phone call on the 10th. Dr. Tiglio called Mr. Donatello and said, okay, how about we do one week on an authorized generic? And he said, make it 10 days. And that was the exchange which Mylan has characterized as the final settlement. And it makes that characterization in large part from a quote from Mr. Donatello saying, yeah, that was the final offer. And they do that with citation to 82760. What they don't address, however, is the question of what does final mean? Because final is an ambiguous word. Mr. Donatello supplied that in his testimony at 82768. Question, and the offer that was out there was Endo's final settlement offer. Correct answer, it was the last one that had been given to Mylan, so in that sense it was final because there were no others. A final doesn't mean take it or leave it. Final doesn't mean that's the drop-dead offer, although that's certainly how Mylan and even the district court seemed to take that phrase. What final meant in that context was, yes, the last one that was set. But it was said, again, in the context of knowing that there were at least four terms to the settlement agreement, one of which the details was reserved until later. But isn't that the way you described the settlement offer to the court in the January 23rd phone call? You said, I thought that was probably the final or extremely close to it. And so at that point you're not talking about the last one. You were saying the final offer, right? Well, I was hoping that it was going to be the four terms that were agreed upon by the parties. Yes, Your Honor. And close to the last one. My hope was and my understanding was that Mylan had delayed two and a half weeks so they could get on the phone and talk about things in detail and resolve the nuts and bolts of the four terms that had been discussed, which is certainly not what happened. And then, of course, the merits decision came down, and that changed the circumstances, to quote Mr. Donatello. But what you haven't been pointed out to is what did Mr. Donatello describe the changed circumstances as meaning. Mylan has painted it as very nefarious. And in the interest of time, I'll just refer the court to the record at 2774 through 75, where Mr. Donatello describes what happened and what he meant by changed circumstances. And finally, because my time is almost out, I want to address the three and only three points. This is, as I said, there were four points, not three and only three. We've discussed the phone call. This is not a unique case. I have been in this courtroom where we've asked the court to defer our argument to last because the parties were settling in the hallway. This is a case where we knew where the end of 30-month stay was coming up. We knew what the deadline was. All of the parties knew. All the parties were working towards a set deadline. The 30 months had passed, and we voluntarily agreed to a few more days. And the judge had canceled a phone call on Monday. This is in the record. Canceled a phone call on Monday and said, I'm not having any more phone calls with counsel. The opinion is coming out. It's due by the end of this week. And lo and behold, on Tuesday, the decision came out. Everybody knew this is not a unique circumstance. These cases happen all the time. To affirm the court below will, of course, set a chilling effect. As to my other arguments, we rest on the briefs. All right, thank you.